Corning v. Bridgewater Gas Co.

---

### Charles S. Corning v. Bridgewater Gas Co.

1. PLEDGES—*When Stock Pledged as Collateral Ceases to be Available.*—Where shares in an incorporated company are pledged as collateral security, and are subsequently canceled by agreement, such stock ceases afterward to be available as such collateral.

Assumpsit, on a promissory note. Error to the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed February 21, 1902.

Statement.—The writ of error in this case is prosecuted to reverse a judgment rendered by the Superior Court of Cook County in favor of the Bridgewater Gas Company against Charles S. Corning, for $2,500.

The suit was instituted against E. B. Stuart and the plaintiff in error jointly; Stuart was defaulted, and a witness for the plaintiff below.

The action was upon the following :

"$2,500.00.                           October 27th, 1896.

Ninety days after date, for value received, I promise to pay to the order of Isaac Ellwood the sum of twenty-five hundred dollars, at First National Bank, Chicago, with interest at the rate of seven per cent per annum after date, having deposited with said Isaac Ellwood, as collateral security, fifty shares of the capital stock of the General Gas Company of Chicago, Illinois, Certificate No. ——, which I hereby give the said Isaac Ellwood, his agent or assignee, authority to sell, or any part thereof, on the maturity of this note, or at any time thereafter, the opinion of said Isaac Ellwood, at public or private sale, at the discretion of said Isaac Ellwood or his assignee, without advertising the same or demanding payment, or giving ten days' notice, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also to the payment of all expenses attending the sale of the said stock, including attorney's fees, and, in case the proceeds of the said sale of the said stock shall not cover the principal, interest and expenses, I promise to pay the deficiency forthwith after such sale.

E. B. STUART."

On the back appears the following indorsement:

" CHARLES S. CORNING:

Pay to the order of the Bridgewater Gas Co.

ISAAC ELLWOOD."

At the time the original note, of which this was the second renewal, was delivered to the payee, there was also delivered with it, as collateral security, fifty shares of the capital stock of the General Gas Company. Subsequently the note in question was assigned by indorsement to the defendant in error, the collateral being transferred with the note.

The original note and the first renewal were not indorsed by Charles S. Corning, but only the second renewal note.

Of the $2,500 obtained upon the first note Mr. Corning received about $2,000 and Mr. Stuart about $500.

Corning v. Bridgewater Gas Co.

Upon the trial Mr. Corning testified :

" Professor Stuart at that time owed me something like $1,500 borrowed money. I asked Mr. Green if he wanted to loan Professor Stuart some money on the General Gas Company's stock. He said he would loan him $2,500 on a collateral note with fifty shares of the gas company's stock attached. I said to Mr. Green, ' Will you offer him a renewal in case Stuart is not able to pay you when the note falls due at the end of the first ninety days ? ' He said, ' Yes.' Said I, ' What will happen, then, in case the professor is not able to pay you ? ' ' Well,' he said, 'I want the stock, unless you will become his surety—indorse the note.' I said, ' Well, Mr. Green, in case that happens, I don't want to see Stuart lose his stock. It must be understood that the stock must be offered for sale, and an opportunity given to the present stockholders of the General Gas Company to buy that stock and apply the proceeds on the note before you shall have the right to take it up.' He says, ' That's all right. I will agree to that.' On the day I had a talk with Mr. Green I saw Professor Stuart and told him I wanted $2,000. He says, 'I have not got $2,000.' ' Well,' I says, ' you got securities and you can borrow it.' He says, ' I can't borrow any money. I haven't got any bank account and influence, as you have, and I don't know moneyed men. But you make the loan for me, and make it for $2,500 and give me $500, because my grocer has got a judgment against me now, and I need money.''

It also appeared that Mr. Ellwood discounted the note at the request of Mr. Green.

The collateral stock was the property of Mr. Stuart. It afterward became valueless, it being canceled by vote of the stockholders, the plaintiff and defendant below, Stuart and others, agreeing thereto.

STIRLEN & DICKSON, attorneys for plaintiff in error.

WOOD & ELMER, attorneys for defendant in error.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Plaintiff in error insists that the collateral stock should, in accordance with his alleged agreement with Green, have been offered for sale and the proceeds applied on the note. The stock was canceled by agreement of plaintiff in error,

and thereafter there was no collateral stock to be sold or offered for sale.

Moreover, the alleged agreement was not with the Bridgewater Gas Company, nor did it, so far as appears, have notice thereof; while presumably it took the note *bona fide*, for value, and before it became due.

The judgment of the Superior Court is affirmed.